UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| CHATEAU SCHOOL, INC., A JAPAN CORPORATION;<br><br>          Plaintiff,<br><br>    vs.<br><br>GREEN MOUNTAIN ASSOCIATES INC., A HAWAI'I CORPORATION; HEIMA YAMAZAKI, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10,<br><br>          Defendants. | CIV. NO. 18-00030 LEK-KSC |

**ORDER GRANTING PLAINTIFF'S MOTION
TO STAY CASE PENDING OUTCOME OF LAWSUIT IN JAPAN**

       On December 2, 2018, Plaintiff Chateau School, Inc., a Japan corporation ("Plaintiff"), filed its Motion to Stay Case Pending Outcome of Lawsuit in Japan ("Motion"). [Dkt. no. 37.] Defendants Green Mountain Associates Inc. ("GMA") and Heima Yamazaki ("Yamazaki" and collectively "Defendants") did not file a memorandum in opposition, and Plaintiff filed its reply on January 4, 2018. [Dkt. no. 49.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules"). Plaintiff's Motion is hereby granted for the reasons set forth below.

Plaintiff is a stock corporation organized and existing under the laws of Japan. [Complaint, filed 1/19/18 (dkt. no. 1), at ¶ 2.] GMA is a Hawai`i corporation, formerly doing business as "Voyage School" and later as "Thinker School." [Id. at ¶ 3; Defs.' Answer to Pltf.'s Complaint, filed 5/7/18 (dkt. no. 21) ("Answer"), at ¶ 4.[1]] Yamazaki is a resident of the State of Hawai`i and a Japanese citizen, and is the President, Director, and shareholder of GMA. [Answer at ¶ 5.]

Plaintiff runs and operates a preschool known as the Chateau School, which is located in Japan, in Nishi-Azabu, Minato-Ku, Tokyo ("Chateau School"). [Complaint at ¶ 11.] According to the Complaint, the Chateau School is a globally-focused preschool with an advanced education program. The Chateau School employs a specialized curriculum and teaching methodology. [Id. at ¶¶ 12-13.] Plaintiff alleges the Chateau School is well known in Tokyo. [Id. at ¶ 15.] On or about December 2016 and into early 2017, Plaintiff and Yamazaki discussed developing a school in Hawai`i using the same concepts and curriculum employed at the Chateau School ("Chateau Information"). [Id. at ¶ 16.] To commemorate their development

_____

[1] Defendants also submit that GMA "registered, owns and may operate under the trade names Voyage School and Thinker's School." [Answer at ¶ 4.]

2

plans, Plaintiff and Yamazaki, through his company, GMA, entered
into the Advisory Agreement on February 3, 2017 ("Advisory
Agreement"). [Id. at ¶¶ 20-21.] Plaintiff alleges the Advisory
Agreement provided Defendants limited use of the Chateau
Information, and did not permit Defendants to, *inter alia*,
operate its own school under any circumstances. [Id. at ¶¶ 22-
23.]

In June 2017, Plaintiff sent a licensing agreement to
Defendants that would have permitted GMA to continue to use the
Chateau Information in exchange for payment. [Id. at ¶ 35.]
Meanwhile, Natalia Koltunovskaya, manager of the Chateau School
operations in Japan, traveled to Hawai`i at the direction of
Plaintiff to assist Yamazaki in opening the Voyage School. [Id.
at ¶ 36.] Here, Plaintiff alleges the preparations took a turn
for the worst when Yamazaki failed to meet the promises he had
made to Plaintiff. [Id. at ¶¶ 38-39.]

Yamazaki had secured a location in the Waikiki
Shopping Plaza for the Voyage School, but ultimately did not
sign the licensing agreement on behalf of GMA. [Id. at ¶¶ 39-
40.] Additionally, Yamazaki neither paid Plaintiff for the use
of the Chateau Information nor provided housing for
Ms. Koltunovskaya while she was in Hawai`i to assist with the
Voyage School opening. [Id. at ¶¶ 40-41.] Yamazaki failed to
obtain the proper permits to open the Voyage School, and failed

to make timely payments to his teachers and staff.
Ms. Koltunovskaya observed that Yamazaki would arrive at the
school site intoxicated during the day, act inappropriately in
front of children and staff, and was overall unfit and
unprepared to operate the Voyage School.  [Id. at ¶¶ 41-42.]
Further, Plaintiff alleges GMA breached the Advisory Agreement
by registering the Voyage School name in the State of Hawai`i
under GMA, without Plaintiff's consent.  [Id. at ¶ 44.]

Shortly thereafter, Plaintiff decided to end its
relations with Defendants, and on September 14, 2017, sent a
demand letter to Defendants ("Demand Letter") terminating any
rights GMA may have had under the Advisory Agreement, and
demanding that Defendants cease their use of the Chateau
Information.  [Id. at ¶¶ 46-47.]  Notwithstanding Plaintiff's
Demand Letter, Defendants continued to run and operate the
Voyage School.  Plaintiff believes Defendants attempted to
establish similar operations using the Chateau Information in
parts of Asia, including Hong Kong, Shanghai, and Beijing.  [Id.
at ¶¶ 50-52.]

Plaintiff alleges the following claims:
misappropriation of trade secrets based on Defendants' improper
use of the Chateau Information ("Count I"); false designation of
origin pursuant to the Lanham Act ("Count II"); unfair
competition pursuant to Haw. Rev. Stat. Chapter 480

4

("Count III"); interference with business advantage ("Count IV"); deceptive trade practices pursuant to Haw. Rev. Stat. Chapter 481A ("Count V"); common law injury to business reputation ("Count VI"); and breach of contract ("Count VII"). Plaintiff seeks general and special damages; recovery of Defendants' gains as a result of the alleged infringement; exemplary and/or punitive damages; and statutory damages. [Id. at pgs. 21-22.] In addition, Plaintiff seeks a preliminary and permanent injunction barring Defendants from continuing to violate Plaintiff's rights, and seeks reimbursement of its attorneys' fees, costs, pre-judgment interest, and such other relief as the Court deems just. [Id. at pg. 22.]

After the Complaint was filed, between March and May of 2018, Plaintiff attempted to serve discovery requests upon Defendants and communicate with Defendants' counsel. [Motion, Decl. of Glenn T. Melchinger ("Melchinger Decl."), at ¶¶ 4-7.] Plaintiff asserts Defendants' counsel would only sporadically respond, and Defendants' document production and responses to Plaintiff's discovery requests were extremely late and insufficient. [Id.] Although Plaintiff's representative, Rina Bovrisse, flew in from Japan to personally attend the settlement conference in Honolulu, Hawai`i in June of 2018, Yamazaki did not, apparently due to issues with his visa. [Id. at ¶ 13.]

Plaintiff asserts Yamazaki's ability to visit the United States is now limited. [Id. at ¶ 14.]

After filing the instant Motion, Plaintiff filed a complaint in the Tokyo District Court on December 26, 2018 ("Japan Action"). [Pltf.'s Amended Suppl. Submission of Exhibit "D-1" (English Translation of Exhibit "D") in Supp. of Motion, filed 1/3/19 (dkt. no. 47), Decl. of Youko Smith ("Smith Decl."), Exh. D-1 at 1-4 (English translation of complaint filed on 12/26/18 in Tokyo District Court ("Japan Complaint")).[2]] The Japan Complaint appears to name Heima Yamazaki as the sole Defendant in the Japan Action, although the factual allegations are largely the same as the Complaint. The Japan Complaint alleges, *inter alia*, that: Plaintiff entered into the Advisory Agreement with GMA on February 3, 2017; Plaintiff provided trade-secret information concerning operating and managing an international preschool; Plaintiff supplied advice and business

---

[2] Plaintiff did not seek leave to file supplemental materials containing declarations or exhibits. See Local Rule LR7.4 ("No further supplemental briefing shall be submitted without leave of court."). However, because Defendants have not objected, and because the contents of the Smith Declaration and Exhibit D-1 are critical to the instant Motion, this Court will consider them with the Motion. Exhibit D-1 does not contain page numbers, and the Court therefore cites to the page numbers assigned by this district court's electronic case filing system. The English translation of the Japan Complaint is located at pages 1-4, while the original Japan Complaint - written in Japanese - is located at pages 5-9.

connections related to the opening of a Voyage School in Hawai`i; and Yamazaki breached the Advisory Agreement by refusing to pay for Plaintiff's services, and by applying for a trademark registration of the Voyage School in Hawai`i. [Id. at pg. 2.] Plaintiff alleges Yamazaki's actions constitute an "act of infringement under Torts (Article 709, Civil Code)" and seeks damages in the amount of 25,453,412 yen, with an additional rate taxed at five percent per day after the Japan Complaint is served upon Yamazaki. [Id. at pgs. 1, 3.] Plaintiff also appears to allege a claim for unjust enrichment. [Id. at pg. 3.]

In the instant Motion, Plaintiff seeks a stay pending the resolution of the Japan Action, or in the alternative, an amendment of the Rule 16 Scheduling Order, [filed 9/18/18 (dkt. no. 34),] to continue the June 3, 2019 trial date and all related deadlines for at least six months. Plaintiff asserts that the Japan Action should proceed first because: the primary witnesses and evidence are located in Japan – including Yamazaki, who now has difficulty returning to the United States; the Japan Action is based on the same nucleus of operative facts as the instant matter; and staying the instant action and proceeding before a Japan court would promote judicial economy since the evidence in this case is primarily in Japanese.

**STANDARD**

Plaintiff moves to stay these proceedings in light of the Japan Action based on the doctrine of international abstention. Plaintiff cites to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), and argues that all factors weigh in favor of granting a stay. [Mem. in Supp. of Motion at 5.] Where there is a parallel proceeding pending in a foreign country, the international abstention doctrine permits federal district courts to decline exercising jurisdiction over a proceeding under "exceptional circumstances." See Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines, 925 F.2d 1193, 1194-95 (9th Cir. 1991) (citing Colorado River, 424 U.S. at 818, 96 S. Ct. at 1246); see also Mujica v. Occidental Petroleum Corp., 381 F. Supp. 2d 1134, 1157 (C.D. Cal. 2005) ("The international abstention doctrine 'allows a court to abstain from hearing an action if there is a first-filed foreign proceeding elsewhere.'" (quoting Supermicro Computer, Inc. v. Digitechnic, S.A., 145 F. Supp. 2d 1147, 1149 (N.D. Cal. 2001))). "Abstention is rooted in concerns of international comity, judicial efficiency and fairness to litigants." Cummins-Allison Corp. v. SBM Co., CIVIL NO. 12-00207 HG-KSC, 2013 WL 12198836, at *4 (D. Hawai`i Aug. 5, 2013) (citation and internal quotation marks omitted). The international abstention doctrine has been adopted by the

8

Eleventh and Seventh Circuits, and the Ninth Circuit has employed a Colorado River analysis to determine whether a stay is appropriate where there is a parallel judicial proceeding pending. See Mujica, 381 F. Supp. 2d at 1157 (citing Finova Capital Corp. v. Ryan Helicopters, U.S.A. Inc., 180 F.3d 896 (7th Cir. 1999); Turner Entm't Co. v. Degeto Film GmbH, 25 F.3d 1512 (11th Cir. 1994); Neuchatel, 925 F.2d at 1194).

In Neuchatel, the Ninth Circuit reviewed a district court's decision to stay the case before it based on the factors in Colorado River, where there was a parallel judicial proceeding pending in Geneva, Switzerland. Neuchatel, 925 F.2d at 1194. The Ninth Circuit held that the district court erred since there were no "exceptional circumstances" present to warrant a stay. Id. at 1195. Applying the guidance in Neuchatel, this Court looks to the following eight factors in Colorado River to address the instant Motion:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

R.R. Street & Co. v. Transport Inc. Co., 656 F.3d 966, 978–79

(9th Cir. 2011) (citing Holder v. Holder, 305 F.3d 854, 870 (9th

Cir. 2002) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr.

Corp., 460 U.S. 1, 15–16, 23, 26, 103 S. Ct. 927 (1983);

Travelers Indem. Corp. v. Madonna, 914 F.2d 1364, 1367–68 (9th

Cir. 1990); Colorado River, 424 U.S. at 818–19, 96 S. Ct.

1236)).  The United States Supreme Court has made it abundantly

clear that abstention is the narrow exception to a federal

district court's "virtually unflagging" obligation to hear

jurisdictionally sufficient claims.  See Colorado River, 424

U.S. at 817.  Only in exceptional circumstances where the

"clearest of justifications" support either a stay or dismissal,

is it appropriate for a court to abstain from exercising its

jurisdiction.  Id. at 818–19.  Moreover, "[a]ny doubt as to

whether a factor exists should be resolved against a stay, not

in favor of one."  Travelers, 914 F.2d at 1369.

**DISCUSSION**

I.  *Colorado River* **Factors**

    A.  **Jurisdiction over the Property**

        Plaintiff asserts this Court has not assumed

jurisdiction over any res, but in the event a judgment is

obtained in the current forum, Plaintiff would likely have to

file a separate proceeding in Japan to enforce the judgment

against Yamazaki.  [Mem. in Supp. of Motion at 7.]  As a result,

the Japan court would take jurisdiction over any res or assets belonging to Yamazaki in Japan. [Id.] This Court agrees insofar as there is no property currently at issue, but declines to consider the hypothetical circumstance Plaintiff has suggested. Money is not the type of tangible physical property contemplated in Colorado River. See Travelers, 914 F.2d at 1368. For the purposes of the Motion and the facts presently before the Court, this factor is neutral, and therefore weighs against abstention. See id. at 1369 (noting that "'[o]nly the clearest of justifications will warrant dismissal'" (quoting Colorado River, 424 U.S. at 819, 96 S. Ct. at 1247)).

**B.    Inconvenience of the Federal Forum**

Plaintiff's strongest arguments rest in the inconvenience of this forum, where there are overwhelming factors in favor of litigating this case in Japan before the Tokyo District Court. In evaluating this factor, the Court considers whether "'the inconvenience of the forum is so great that this factor points toward abstention.'" Id. at 1368 (quoting Evanston Ins. Co. v. Jimco, Inc., 844 F.2d 1185, 1192 (5th Cir. 1998)). Here, it appears there are ample reasons why the federal forum will be "greatly inconvenient." See id.

First, Plaintiff points out that Yamazaki has returned to Japan and is no longer able to freely travel to the United States, including Hawai`i, due to issues with his visa.

11

[Melchinger Decl. at ¶¶ 13-14.]  Rina Bovrisse, the
Representative Director and Chief Executive Officer of the
Chateau School, Inc., represented that, based on Yamazaki's
Facebook page and information conveyed to her and her attorney
at the settlement conference with the magistrate judge, Yamazaki
has moved back to Tokyo, Japan.  [Submission of Decl. of Rina
Bovrisse in Supp. of Motion, filed 12/10/18 (dkt. no. 39), Decl.
of Rina Bovrisse ("Bovirsse Decl.") at ¶ 6.[3]]  According to
Plaintiff, Yamazaki's counsel has also failed to respond to
whether Yamazaki would be able to attend a Fed. R. Civ. P.
30(b)(6) deposition, if noticed.  [Melchinger Decl. at ¶ 15.]

Second, most of the documents and evidence – including
"witnesses, parties, and principals" – are located in Japan, and
will need to be both transported and translated into English if
this proceeding were to continue in the current forum.  [Mem. in
Supp. of Motion at 8.]  If the Japan Action were to proceed,
Ms. Bovrisse stated that "[s]ome translations into Japanese may
be required for the Japan litigation, but more English
translations and interpretation will be required to present the

---

[3] Attached to Plaintiff's Motion as Exhibit C was the
unsigned Declaration of Rina Bovrisse.  [Motion, Melchinger
Decl., Exh. C.]  Because the only difference between Exhibit C
and the Bovrisse Declaration is the date and location, as well
as Ms. Bovrisse's signature which were all later added, the
Court will consider it with the Motion.

Japanese documents and testimony in English" in the instant

matter. [Bovrisse Decl. at ¶ 11.]

Third, costs for translators and interpreters, as well

as costs for transporting evidence to this forum is unduly

burdensome, and will require air travel. Fourth, the length of

trial would increase substantially with the use of duplicated

exhibits translated from Japanese to English, and increased time

due to translated testimony.[4] Combined with the fact that

Defendants have not filed a memorandum in opposition to the

Motion, the Court is inclined to agree that the federal forum is

greatly inconvenient to the parties. The Court therefore finds

the foregoing issues would present marked delays and/or

---

[4] Other courts have held translation of trial materials and
evidence to be a valid basis for choosing one forum over
another. See, e.g., Moreta v. First Transit of PR, Inc., 39 F.
Supp. 3d 169, 183 (D.P.R. 2014) (finding that the interest of
judicial economy and fairness weighed in favor of the federal
district court retaining supplemental jurisdiction since, inter
alia, Puerto Rico courts operate in Spanish, and documents and
filings would need to be translated); Avianca, Inc. v. Corriea,
Civ. A. No. 85-3277 (RCL), 1991 WL 496132, at *3 (D.D.C. May 31,
1991) (holding that judicial economy weighed in favor of federal
district court retaining jurisdiction because transfer based on
forum non conveniens to Columbia would "require testimony and
depositions already taken in English . . . to be translated into
Spanish" (citing Friends for All Children Inc. v. Lockheed
Aircraft Corp., 717 F.2d 602, 608 (D.C. Cir. 1983))); Archangel
Diamond Corp. Liquidating Trust v. OAO Lukoil, 75 F. Supp. 3d
1343, 1381 (D. Col. 2014) (holding that Russian court was more
appropriate where evidence, and the parties' contacts were
closer to Russia, and translation of materials into English
would be administrative burden on parties and court).

difficulties with proceeding in this forum, as opposed to proceeding in the Japan Action. Accordingly, this factor weighs in favor of abstention.

### C. Desire to Avoid Piecemeal Litigation

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." Travelers, 914 F.2d at 1369 (citation and internal quotation marks omitted). Avoiding piecemeal litigation is considered one of the most important factors in the Colorado River analysis. See Moses H. Cone, 460 U.S. at 16 ("By far the most important factor in our decision to approve dismissal [in Colorado River] was the 'clear federal policy . . . [of] avoidance of piecemeal adjudication[.]'" (some alterations in Moses H. Cone) (quoting Colorado River, 424 U.S. at 819)). There must be a "special concern about piecemeal litigation"; the "mere possibility" of it does not meet the exceptional circumstances contemplated under Colorado River. See R.R. Street, 656 F.3d at 979 (citations and internal quotation marks omitted).

Here, as with nearly all motions brought under Colorado River, there is a real concern that proceeding in both the instant action and the Japan Action will lead to piecemeal litigation. The Japan Action involves both the same Advisory Agreement at issue in the instant matter, and the same dispute

14

concerning the failed attempt to develop the Voyage School, as well as Yamazaki's alleged infringement of Plaintiff's trade-secret information. Although there are certain claims and damages absent from the Japan Action, Plaintiff asserts it has accepted its pared down version of the Japan Complaint and "will invoke the Japan courts' jurisdiction." [Mem. in Supp. of Motion at 8.]

Still, <u>Colorado River</u> requires an additional factor before abstention is warranted.

> <u>Colorado River</u> does **not** say that every time it is possible for a state court to obviate the need for federal review by deciding factual issues in a particular way, the federal court should abstain. . . . <u>Colorado River</u> stands for the proposition that when Congress has passed a law expressing a preference for unified state adjudication, courts should respect that preference.

<u>United States v. Morros</u>, 268 F.3d 695, 706 (9th Cir. 2001) (emphasis in <u>Morros</u>). In other words, there must be a strong policy at stake that urges the Court to give up its obligation to exercise jurisdiction over a claim rightfully filed with this district court. <u>See</u> <u>id.</u> While Plaintiff points to no such Congressional intent directing the parties to bring their dispute before a Japan court, the Court finds exceptional circumstances exist where both parties are located in Japan, the evidence – including documents and testimony – will primarily be in the Japanese language, and having the matter proceed in the

Japan Action will serve the interests of judicial economy and international comity.  The Court considers the additional complexity that most of the evidence must first be translated into English, and that any differentiating terms could potentially alter an interpretation of the evidence.  For these reasons, the Court finds that this factor weighs in favor of a stay pending the resolution of the Japan Action.

**D.    Order in Which the Forums Obtained Jurisdiction**

The Supreme Court has cautioned against a mechanical application of this factor, and encouraged courts to approach it "in a pragmatic, flexible manner with a view to the realities of the case at hand."  See Moses H. Cone, 460 U.S. at 21.  The relative progress of the separate matters, such as whether any dispositive motions have been filed and ruled on, is more relevant than the dates on which the federal and foreign complaints were filed.  See id. (noting that "the federal suit was running well ahead of the state suit at the very time that the District Court decided to refuse to adjudicate the case").  Here, prior to the instant Motion, little advancement has been made toward the resolution of this action.  There has been an attempt at a settlement conference, some discovery production, but otherwise, no other substantial progress.  In contrast, Plaintiff only recently filed the Japan Complaint on December 26, 2018.  Because the instant matter is only slightly

more developed than the Japan Action, the Court finds this factor to be neutral, if only somewhat against abstention.

### E. **Rule of Decision**

Plaintiff asserts neither the laws of Japan nor the laws of the United States control because the trademarks and tradenames are registered in both Japan and the United States, therefore this factor is neutral. [Mem. in Supp. of Motion at 11.] Count II, and possibly Count I,[5] of the Complaint assert claims arising under federal law, while Counts III through VII appear to arise under either the Hawai`i Revised Statutes or state common law claims. Conversely, the Japan Action asserts a primary claim arising under "Torts (Article 709, Civil Code)" for "infringement" based on Yamazaki's use of the Chateau Information, and a secondary claim, which appears similar to a common law unjust enrichment claim. See Japan Complaint at pgs. 3-4. Plaintiff has not made any argument identifying how Japan's laws would control the underlying action. Even considering Plaintiff's argument that this factor is neutral, "[a]ny doubt as to whether a factor exists should be resolved

---

[5] The Complaint does not expressly state whether Count I is brought pursuant to 18 U.S.C. § 1836 or Haw. Rev. Stat. Chapter 482B. See WHIC LLC v. NextGen Labs., Inc., 341 F. Supp. 3d 1147, 1160-62 (D. Hawai`i 2018) (discussing similarity of analysis under either the federal Defend Trade Secrets Act, 18 U.S.C. § 1832, and Hawaii's Uniform Trade Secrets Act, Haw. Rev. Stat. Chapter 482B).

against a stay, not in favor of one." Travelers, 914 F.2d at

1369. The Court finds this factor weighs against abstention.

**F.     Adequacy of the Japan Court**

The Ninth Circuit has stated:

> The adequacy factor looks to whether the
> state court might be unable to enforce federal
> rights.  See, e.g., Cone Mem'l Hosp., 460 U.S. at
> 26-27, 103 S. Ct. 927 (finding state proceedings
> might be inadequate because it was unclear
> whether state courts would compel arbitration
> under the Federal Arbitration Act); [Travelers],
> 914 F.2d at 1370 ("This factor involves the **state**
> court's adequacy to protect **federal** rights, not
> the federal court's adequacy to protect state
> rights." (citing Cone Mem'l Hosp., 460 U.S. at
> 26, 103 S. Ct. 927)).

Seneca Ins. Co. v. Strange Land, Inc., 862 F.3d 835, 845 (9th

Cir. 2017) (emphases in Seneca).

Ms. Bovrisse states that "certain remedies available

under U.S. or Hawai`i law, such as treble damages, punitive

damages, or equitable relief, may not be available under the

Japan civil law system." [Bovrisse Decl. at ¶ 17.]  Plaintiff

seeks a stay of the instant matter rather than dismissal in

order to preserve its claim for punitive damages, which

Plaintiff claims cannot be brought in the Japan Action.  [Mem.

in Supp. of Motion at 11-12.]  Defendants have not filed any

counterclaim in this action, nor have they raised any arguments

as to why the Japan court could not adequately protect their

rights.  The Court finds that in terms of adequacy, the Japan

18

Action does not protect all of the rights of at least Plaintiff where the Japan Civil Code does not permit some of the remedies Plaintiff has sought in the instant action.

### G. **Forum Shopping**

"When evaluating forum shopping under <u>Colorado River</u>, we consider whether either party improperly sought more favorable rules in its choice of forum or pursued suit in a new forum after facing setbacks in the original proceeding." <u>Seneca</u>, 862 F.3d at 846 (citing <u>Nakash v. Marciano</u>, 882 F.2d 1411, 1417 (9th Cir. 1989)). It is not necessarily improper however where a party acted within its rights to file suit in an appropriate forum, even where "[t]he chronology of events suggests that both parties took a somewhat opportunistic approach to th[e] litigation." <u>Id.</u> (alterations in original) (citations and internal quotation marks omitted). Here, there does not appear to be evidence of forum shopping, and neither party points to the wrongdoing of the other. Rather, Plaintiff argues the instant Motion is necessary because Yamazaki no longer resides in the forum, and has returned to Japan, where the majority of the witnesses and evidence are located, and where the Tokyo District Court will have greater ease in handling evidence presented in the Japanese language. Plaintiff was within its right to initially file its claim with this district court, despite the inconvenience of a language barrier

and distance from Japan, and Plaintiff argues no foul play on the part of Defendants in Yamazaki returning to Japan. Therefore, the Court finds there is no evidence that either party sought to manipulate the litigation or engage in vexatious behavior that would lead to forum shopping. See Seneca, 862 F.3d at 846.

## H. **Parallelism**

The "parallelism factor" looks to whether the state litigation will completely and promptly resolve the issues between the parties in the federal action. See id. at 845 (citations omitted). "Though 'exact parallelism . . . is not required,' substantial similarity of claims is necessary before abstention is available." Id. (quoting Nakash, 882 F.2d at 1416).

It does not appear from Plaintiff's Motion that this issue has been addressed at length since Plaintiff cites to a case from a California district court that only considered six factors, see Mem. in Supp. of Motion at 5 (citing J2 Textile Co., Ltd. v. Samsung C&T Am., Inc., CV-14-07483 SJO (ASx), 2015 WL 13357664, at *1 (C.D. Cal. Feb. 17, 2015)),[6] whereas the Ninth

_____

[6] In J2, the district court arguably addressed the "parallelism factor" in its analysis of the adequacy of the foreign proceedings when comparing plaintiff's punitive damages claim in the federal action to its inability to assert it in the Korean action. See 2015 WL 13357664, at *4-5.

Circuit more recently recited eight Colorado River factors. See Seneca, 862 F.3d at 841-42. The Court has compared the Complaint in the instant matter with the Japan Complaint, and determined that it is unclear whether Counts II through VII would be resolved in the Japan Action based on the Japan Complaint. Nor has Plaintiff identified how the claims in the instant matter are substantially the same as the claims in the Japan Action. Further, the Japan Complaint does not appear to name GMA, whereas the instant matter does. In J2, the district court briefly appears to address the "parallelism factor," only as to punitive damages, which the district court found could not be brought in a Korean court. See 2015 WL 13357664, at *4-5. Because only damages were at issue, the district court held that a stay, rather than dismissal was appropriate.

Still, it appears the primary thrust of Plaintiff's Complaint - infringement of a trademark claim – has been asserted in the Japan Action, and it is possible that, where the Japan Action arises out of the same factual allegations, a determination in the Japan Action may have a res judicata effect on the claims alleged in the instant matter. See, e.g., ScripsAmerica, Inc. v. Ironridge Global LLC, 56 F. Supp. 3d 1121, 1148-49 (C.D. Cal. 2014) (holding that identity of claims was not necessary for parallelism where the claims in both the state action and federal action arose out of the same factual

allegations, therefore the actions were substantially similar). Neither does the fact that GMA is not named in the Japan Complaint serve as a bar to finding parallelism between the two Actions. See, e.g., Freed v. Friedman, 215 F. Supp. 3d 642, 650-51 (N.D. Ill. 2016) (holding that a federal suit and state suits were not rendered non-parallel where one party to the federal suit was not present in state suits).

On balance, this Court FINDS that a stay is warranted under Colorado River because: there is a true danger of piecemeal litigation that could result in conflicting outcomes of the same legal issues; the inconvenience of the federal forum is great to both parties; and there is no evidence of forum shopping. Moreover, both the parties and the majority of the evidence will be in Japanese, which will be better received by the Tokyo District Court. Finally, staying the instant matter and allowing the Japan Action to proceed first will prevent delayed proceedings before this Court, may narrow or completely resolve issues in the instant matter, and thus will serve the interest of judicial economy.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion to Stay Case Pending Outcome of Lawsuit in Japan, filed December 2, 2018, is HEREBY GRANTED.

The Court directs the Clerk's Office to administratively close this case fifteen days from the entry of this Order, unless Defendants file a timely motion for reconsideration of this Order. Upon the conclusion of the Japan Action, Plaintiff is DIRECTED to contact the magistrate judge assigned to this case to schedule a status conference to discuss whether it is necessary to restore the instant case to its active docket.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, February 19, 2019.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

CHATEAU SCHOOL, INC. VS. GREEN MOUNTAIN ASSOCIATION, ET AL; CV 18-00030 LEK-RT; ORDER GRANTING PLAINTIFF'S MOTION TO STAY CASE PENDING OUTCOME OF LAWSUIT IN JAPAN

23